JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

LuCinda Branson, Evan Ganz, Darlene Hughes, Thomas Isaak, Monica Rausert, Barbara Rose, and Jack Shannon

**(b)** County of Residence of First Listed Plaintiff   Arundel
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brian C. Farrell, Esquire, Console Mattiacci Law. LLC 1525 Locust Street, 9th Floor, Philadelphia, PA 19102 (215) 545-7676

## DEFENDANTS

IKEA Holding US, Inc. d/b/a IKEA, IKEA US Retail, LLC, and IKEA North America Services, LLC d/b/a IKEA

County of Residence of First Listed Defendant   Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Paul Lancaster Adams, Esquire, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 1735 Market Street, Suite 3000, Philadelphia, PA 19103

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange |
| | | **LABOR** | | [ ] 890 Other Statutory Actions |
| | | [ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | |
| [ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | [ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[x] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609<br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. §621, et seq. (ADEA); 29 U.S.C. § 626(b); 29 U.S.C. § 216(b)

Brief description of cause:
Plaintiffs bring this action for unlawful age discrimination.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
In excess of $150,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE   Honorable Anita B. Brody
DOCKET NUMBER   18-599; 19-723; 19-1286

DATE
11/6/2020

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

## FOR OFFICE USE ONLY

RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Severn, MD 21144 (address of first named Plaintiff, LuCinda Branson) _____

Address of Defendant: _____ 420 Alan Wood Road, Conshohocken, PA 19428 _____

Place of Accident, Incident or Transaction: _____ Conshohocken, PA 19428 _____

---

*RELATED CASE, IF ANY:*

Case Number: **18-599; 19-723; 19-1286**    Judge: **Honorable Anita B. Brody**    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?      Yes [ ]   No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?      Yes [X]   No [ ]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?      Yes [ ]   No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?      Yes [ ]   No [X]

I certify that, to my knowledge, the within case [●] is / [ ] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **11/06/2020** _____    _____ *Attorney-at-Law / Pro Se Plaintiff* _____    **319145** _____ *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

| | |
|---|---|
| **A.** *Federal Question Cases:* | **B.** *Diversity Jurisdiction Cases:* |
| [ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts | [ ] 1. Insurance Contract and Other Contracts |
| [ ] 2. FELA | [ ] 2. Airplane Personal Injury |
| [ ] 3. Jones Act-Personal Injury | [ ] 3. Assault, Defamation |
| [ ] 4. Antitrust | [ ] 4. Marine Personal Injury |
| [ ] 5. Patent | [ ] 5. Motor Vehicle Personal Injury |
| [ ] 6. Labor-Management Relations | [ ] 6. Other Personal Injury *(Please specify):* _____ |
| [✓] 7. Civil Rights | [ ] 7. Products Liability |
| [ ] 8. Habeas Corpus | [ ] 8. Products Liability – Asbestos |
| [ ] 9. Securities Act(s) Cases | [ ] 9. All other Diversity Cases |
| [ ] 10. Social Security Review Cases | *(Please specify):* _____ |
| [ ] 11. All other Federal Question Cases | |
| *(Please specify):* _____ | |

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, **Brian C. Farrell** _____, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[X] Relief other than monetary damages is sought.

DATE: **11/06/2020** _____    _____ *Attorney-at-Law / Pro Se Plaintiff* _____    **319145** _____ *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| LuCinda Branson, *et al.* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| IKEA Holding US, Inc. d/b/a | : | |
| IKEA, *et al.* | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　( x )

| | | |
|---|---|---|
| 11/6/2020 | | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-565-2851 | farrell@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| **LuCinda Branson,** : | |
| **Evan Ganz,** : | |
| **Darlene Hughes,** : | |
| **Thomas Isaak,** : | |
| **Monica Rausert,** : | |
| **Barbara Rose, and** : | |
| **Jack Shannon,** : | |
| : | |
| **Plaintiffs** : | |
| : | **CIVIL ACTION NO. __** |
| : | |
| **v.** : | **JURY TRIAL DEMANDED** |
| : | |
| : | |
| **IKEA HOLDING US, INC.** : | |
|   **d/b/a IKEA,** : | |
| : | |
| **IKEA US RETAIL, LLC** : | |
|   **d/b/a IKEA** : | |
| : | |
|   **and** : | |
| : | |
| **IKEA NORTH AMERICA SERVICES, LLC** : | |
|   **d/b/a IKEA** : | |
| : | |
| **Defendants** : | |
| : | |

---

## <u>COMPLAINT</u>

## I.   PRELIMINARY STATEMENT.

Plaintiffs, LuCinda Branson, Evan Ganz, Darlene Hughes, Thomas Isaak, Monica

Rausert, Barbara Rose, and Jack Shannon, bring this age discrimination action against their

employer,  IKEA Holding US, Inc. d/b/a IKEA, IKEA US Retail LLC d/b/a IKEA, and IKEA

North America Services, LLC d/b/a IKEA (collectively, "IKEA US" or Defendants).

1

The IKEA Group is a multinational company that openly expresses a preference in favor of young employees as the company's future leaders, including in its operations in the United States.  IKEA US openly and publicly violates US law prohibiting age discrimination, has a corporate culture of age discrimination, and has engaged in a company-wide pattern and practice of age discrimination against its older employees, including Plaintiffs LuCinda Branson, Evan Ganz, Darlene Hughes, Thomas Isaak, Monica Rausert, Barbara Rose, and Jack Shannon.

Each of the Plaintiffs is a current employee of IKEA US who has been adversely affected by IKEA US's pattern and practice of age discrimination.  Each has repeatedly applied for open and available positions for which they have been well qualified, and each repeatedly rejected in favor of substantially younger applicants.  Each Plaintiff has opted in to join one or more of the ADEA representative collective actions against IKEA now pending in this Court.  Since the time of the rejections at issue therein, each Plaintiff has continued to be subject to IKEA's general and pervasive corporate policy of favoring younger candidates for promotion, and has been rejected for positions for which they were qualified because of their age.

Plaintiffs Branson, Ganz, Hughes, Isaak, Rausert, Rose, and Shannon bring this action together, on behalf of themselves, pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 626(b), incorporating section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), and pursuant to Rule 20 of the Federal Rules of Civil Procedure.

Plaintiffs jointly and severally seek injunctive and declaratory relief against IKEA US to address its age discriminatory policies and practices, and each Plaintiff seeks damages against IKEA US for the individual harm he or she has suffered as a result of the age discrimination alleged herein.

## II.   PARTIES.

1.      Plaintiff Lucinda Branson is an individual and citizen of the state of Maryland, residing therein in Severn, Maryland, 21144.

2.      Plaintiff Branson was born in July, 1957, and is currently 63 years old.

3.      Plaintiff Branson is a current IKEA US employee who works at the IKEA store located in College Park, Maryland.

4.      In addition to bringing the instant action against IKEA US, Plaintiff Branson has filed a Consent to Join as an opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)).

5.      Plaintiff Evan Ganz is an individual and citizen of the state of New Jersey, residing therein in Union, New Jersey, 07083.

6.      Plaintiff Ganz was born in October, 1972, and is currently 48 years old.

7.      Plaintiff Ganz is a current IKEA US employee who works at the IKEA store located in Elizabeth, New Jersey.

8.      In addition to bringing the instant action against IKEA US, Plaintiff Ganz has filed a Consent to Join as an opt-in plaintiff in *Donofrio v. IKEA US Retail, LLC* (E.D. Pa. 2:18-cv-00599 ( AB)), *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)), and *Antonelli v. IKEA Holding US, Inc., et al.*  (E.D. Pa. 2:19-cv-01286 (AB)).

9.      Plaintiff Darlene Hughes is an individual and citizen of the state of Pennsylvania, residing therein in Philadelphia, Pennsylvania, 19150.

10.     Plaintiff Hughes was born in April, 1969, and is currently 51 years old.

11.     Plaintiff Hughes is a current IKEA US employee who works at the IKEA store located in Philadelphia, Pennsylvania.

12.     In addition to bringing the instant action against IKEA US, Plaintiff Hughes has filed a Consent to Join as an opt-in plaintiff in *Donofrio v. IKEA US Retail, LLC* (E.D. Pa. 2:18-cv-00599 ( AB)), *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)), and *Antonelli v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-01286 (AB)).

13.     Plaintiff Thomas Isaak is an individual and citizen of the state of Utah, residing therein in South Jordan, Utah, 84095.

14.     Plaintiff Isaak was born in November, 1972, and is currently 47 years old.

15.     Plaintiff Isaak is a current IKEA US employee who works at the IKEA store located in Draper, Utah.

16.     In addition to bringing the instant action against IKEA US, Plaintiff Isaak has filed a Consent to Join as an opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)).

17.     Plaintiff Monica Rausert is an individual and citizen of the state of Colorado, residing therein in Highlands Ranch, Colorado, 80129.

18.     Plaintiff Rausert was born in July, 1967, and is currently 53 years old.

19.     Plaintiff Rausert is a current IKEA US employee who works at the IKEA store located in Centennial, Colorado.

20.     In addition to bringing the instant action against IKEA US, Plaintiff Rausert has filed a Consent to Join as an opt-in plaintiff in *Donofrio v. IKEA US Retail, LLC* (E.D. Pa. 2:18-cv-00599 (AB)), *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)), and *Antonelli v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-01286 (AB)).

21.     Plaintiff Barbara Rose is an individual and citizen of the state of Maryland, residing therein in Myersville, Maryland, 21773.

22.     Plaintiff Rose was born in August, 1965, and is currently 55 years old.

23.     Plaintiff Rose is a current IKEA US employee who works at the IKEA store located in College Park, Maryland.

24.     In addition to bringing the instant action against IKEA US, Plaintiff Rose has filed a Consent to Join as an opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)).

25.     Plaintiff Jack Shannon is an individual and citizen of the state of Indiana, residing therein in Indianapolis, Indiana, 46229.

26.     Plaintiff Shannon was born in December, 1955, and is currently 64 years old.

27.     Plaintiff Shannon is a current IKEA US employee who works at the IKEA store located in Fishers, Indiana.

28.     In addition to bringing the instant action against IKEA US, Plaintiff Shannon has filed a Consent to Join as an opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)) and *Antonelli v. IKEA Holding US, Inc., et al.*  (E.D. Pa. 2:19-cv-01286 (AB)).

29.     "IKEA" is a multinational company that presents and promotes itself publicly as a centrally controlled entity known as the "IKEA Group."

30.     The IKEA Group operates in the United States through various owned and controlled subsidiary entities all of which do business as and present themselves as "IKEA," including, without limitation, defendants IKEA Holding US, Inc., IKEA US Retail, LLC, and IKEA North America Services, LLC.

31.     Defendant IKEA Holding US, Inc. is a Delaware corporation with headquarters and a principal place of business located in Conshohocken, Pennsylvania.

32.     Defendant IKEA Holding US, Inc., through its subsidiary entities, owns defendant IKEA US Retail, LLC, and its subsidiary, IKEA North America Services, LLC.

33.     Defendant IKEA US Retail, LLC is a limited liability company with headquarters and a principal place of business located in Conshohocken, Pennsylvania.

34.     Defendant IKEA North America Services, LLC is a limited liability company with headquarters and a principal place of business located in Conshohocken, Pennsylvania.

35.     Defendants share common ownership, management, human resources and employment policies.

36.     The IKEA Group, through its various owned and controlled subsidiary companies, including Defendants, holds itself out to the public and its employees in the United States as one company.

37.     IKEA US is interconnected such that the entities that comprise it are considered a "single" and/or "integrated" employer, and/or "joint" employer.

38.     Defendants are alter-egos of each other, IKEA US and/or the IKEA Group.

39.     Defendants are interconnected such that each entity, individually or collectively, contributed to, caused and/or is responsible for the age discrimination alleged herein.

40.     IKEA US employs over 15,000 people.

41.     At all times material hereto, Defendants, individually and/or collectively, have been engaged in an industry affecting interstate commerce and have acted as an "employer" within the meaning of the anti-discrimination laws at issue.

42.     At all times material hereto, Defendants, individually and/or collectively, employed more than twenty (20) people.

43.     At all times material hereto, Defendants, individually and/or collectively, acted by and through their authorized agents, servants, and/or employees within the course and scope of their employment with Defendants and in furtherance of the business of Defendants.

44.     At all times material hereto, Plaintiffs have been employees of Defendants, individually and/or collectively, within the meaning of the anti-discrimination laws at issue.

## III.   JURISDICTION AND VENUE.

45.     All Plaintiffs allege causes of actions arising under the ADEA, as amended, 29 U.S.C. §621, *et seq.*

46.      In addition to claims under the ADEA:

   a.  Plaintiff Branson alleges claims arising under the Maryland State Government Code Ann. § 20-606(a) *et seq.*;

   b.  Plaintiff Ganz alleges claims arising under the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("NJLAD");

   c.  Plaintiff Rausert alleges claims arising under the Colorado Anti-Discrimination Act, as amended, C.R.S. § 24-34-401 *et seq.* ("CADA"); and

   d.  Plaintiff Rose alleges claims arising under Maryland State Government Code Ann. § 20-606(a) *et seq.*

47.     The amount in controversy in connection with each Plaintiff's claim exceeds the sum or value of $75,000, exclusive of interest and costs.

48.     The District Court has jurisdiction over all of the ADEA claims (Counts I, II, and III) pursuant to 29 U.S.C. §626(c) and 28 U.S.C. §1331.

49.     The District Court has jurisdiction over the claims arising under Maryland State Government Code Ann., the NJLAD, and CADA ( Counts IV, V, and VI) pursuant to 28 U.S.C. § 1367.

50.     In addition, the District Court has jurisdiction pursuant to 28 U.S.C. § 1332 over all claims asserted by Plaintiffs Branson, Ganz, Isaak, Rausert, Rose, and Shannon.

51.     The District Court has personal jurisdiction over Defendant IKEA US Retail, LLC because, *inter alia,* defendant maintains its headquarters and/or a principal place of business in Pennsylvania, maintains systematic and continuous activity such that it is at home in Pennsylvania, the actions giving rise and/or related to this suit occurred in Pennsylvania, and/or it has consented to the jurisdiction of this Court through, among other things, its appointment of an authorized agent in Pennsylvania to accept service of process.

52.     The District Court has personal jurisdiction over Defendant IKEA North America Services, LLC because, *inter alia,* defendant maintains its headquarters and/or a principal place of business in Pennsylvania, maintains systematic and continuous activity such that it is at home in Pennsylvania, the actions giving rise and/or related to this suit occurred in Pennsylvania, and/or it has consented to the jurisdiction of this Court through, among other things, its appointment of an authorized agent in Pennsylvania to accept service of process.

53.     The District Court has personal jurisdiction over Defendant IKEA Holding US, Inc. because, *inter alia,* defendant maintains its headquarters and/or a principal place of business in Pennsylvania, maintains systematic and continuous activity such that it is at home in Pennsylvania, the actions giving rise and/or related to this suit occurred in Pennsylvania, and/or it has consented to the jurisdiction of this Court through, among other things, its appointment of an authorized agent in Pennsylvania to accept service of process.

54.     Venue is proper under 28 U.S.C. § 1391(b) because, without limitation, Defendants are residents in this judicial district and/or a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

55.     On or about March 25, 2020, Plaintiff Branson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dual filed with the Maryland Commission on Civil Rights.  Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of Plaintiff Branson's Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

56.     On or about July 23, 2020, Plaintiff Branson filed an Amended Charge of Discrimination with the EEOC, which was dual filed with the Maryland Commission on Civil Rights.  Attached hereto, incorporated herein, and marked as Exhibit "B" is a true and correct copy of Plaintiff Branson's Amended Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

57.     More than 180 days have passed since Plaintiff Branson filed her March 25, 2020 EEOC Charge.

58.     On or about March 23, 2020, Plaintiff Ganz filed a Charge of Discrimination with the EEOC.  Attached hereto, incorporated herein, and marked as Exhibit "C" is a true and correct copy of Plaintiff Ganz's March 23, 2020 Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

59.     On or about May 15, 2020, Plaintiff Ganz filed an Amended Charge of Discrimination with the EEOC.  Attached hereto, incorporated herein, and marked as Exhibit "D" is a true and correct copy of Plaintiff Ganz's May 15, 2020 Amended Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

60.     On or about April 27, 2020, Plaintiff Hughes filed a Charge of Discrimination with the EEOC, which was dual filed with the Pennsylvania Human Relations Commission.

Attached hereto, incorporated herein and marked as Exhibit "E" is a true and correct copy of Plaintiff Hughes's April 27, 2020 Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

61.     On or about July 13, 2020, Plaintiff Isaak filed a Charge of Discrimination with the EEOC, which was dual filed with the Utah Labor Commission ("ULC").  Attached hereto, incorporated herein and marked as Exhibit "F" is a true and correct copy of Plaintiff Isaak's July 13, 2020 Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

62.     On or about April 20, 2020, Plaintiff Rausert filed a Charge of Discrimination with the EEOC, which was dual filed with the Colorado Civil Rights Division ("CCRD"). Attached hereto, incorporated herein and marked as Exhibit "G" is a true and correct copy of Plaintiff Rausert's April 20, 2020 Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

63.     Plaintiff Rausert has requested a right to sue from the CCRD and, upon information and belief, the CCRD has or will imminently issue to Plaintiff Rausert a notice of right to sue on her claims under the CADA.

64.     On or about February 25, 2020, Plaintiff Rose filed a Charge of Discrimination with the EEOC, which was dual filed with the Maryland Commission on Civil Rights.  Attached hereto, incorporated herein and marked as Exhibit "H" is a true and correct copy of Plaintiff Rose's February 25, 2020 Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

65.     More than 180 days have passed since Plaintiff Rose filed her Charge of Discrimination.

66.     The EEOC on or about August 11, 2020, notified Plaintiff Rose that it had closed its file and issued to her a notice of right to sue.

67.     On or about March 13, 2020, Plaintiff Shannon filed a Charge of Discrimination with the EEOC.  Attached hereto, incorporated herein and marked as Exhibit "I" is a true and correct copy of Plaintiff Shannon's March 13, 2020 Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

68.     More than 60 days have passed since each Plaintiff filed a Charge of Discrimination with the EEOC.

69.     Plaintiffs have fully complied with all administrative prerequisites for the commencement of this action.

## IV.     FACTUAL ALLEGATIONS SUPPORTING CLAIMS.

### *IKEA US's Policy of Favoring Younger Employees and its Pattern and Practice of Age Discrimination*

70.     The IKEA Group is a multinational company that has a corporate culture of age bias.

71.     The IKEA Group openly expresses a preference in favor of young employees as the future leaders of the company.

72.     The IKEA Group has, among other things, directed IKEA US to set age-biased personnel goals for management level employees.

73.     The IKEA Group has, among other things, directed IKEA US to consider age in its employment decisions.

74.     The IKEA Group has, among other things, directed IKEA US to prefer younger individuals in management positions.

75.     The IKEA Group owns and controls IKEA US.

76.     IKEA US maintains headquarters that are located in Conshohocken, Pennsylvania.

77.     IKEA US refers to its U.S. headquarters as the "Service Office."

78.     Upon information and belief, the Service Office is staffed by employees who receive their W-2 forms from defendant North America Services, LLC, but whose areas of responsibility cover the entirety of IKEA US.

79.     IKEA US utilizes centralized human resources and employment policies and strategies that are promulgated in and disseminated from the Service Office in Conshohocken, Pennsylvania.

80.     IKEA US's centralized human resources, personnel and employment policies and strategies are implemented in connection with the job application/selection for promotion process through, among things, the involvement of its internal recruiters.   Among other things, the recruiters pre-screen applicants, interview candidates, make recommendations, and finally approve successful candidates for promotion.

81.     Upon information and belief, IKEA US asks all employees to indicate their willingness to relocate, and the recruiters consider same in screening applicants for all positions.

82.     Upon information and belief, IKEA US has a practice of closing and then re-posting job opportunities under a different requisition number and with relocation support in an effort to attract younger candidates.

83.     Upon information and belief, IKEA US has a practice of closing and then re-posting job opportunities under a different requisition number without relocation support in an effort to dissuade older candidates.

84.     IKEA US has a corporate culture of age bias.

85.    IKEA US has had in place a goal to create a younger management base.

86.    IKEA US has had in place a long term strategy of having young people in management positions.

87.    IKEA US has had in place a policy to favor young employees in management positions.

88.    IKEA US openly expresses a preference in favor of young employees as the future leaders of the company.

89.    IKEA US has set age-biased personnel goals for management level employees.

90.    IKEA US considers age in its employment decisions, and favors younger employees when making promotions decisions and selecting individuals for management positions.

91.    Age bias from the top-down infuses and infects the employment decision-making process throughout the entirety of IKEA US.

92.    IKEA US has engaged in systemic age discrimination against its older employees.

93.    IKEA US has engaged in a pattern and practice of age discrimination.  Without limitation:

    a.   IKEA US has had in place long term goals to have a younger management base and a certain number of younger individuals in management level positions.  Every IKEA US store was directed that if it lost a member of its Store Steering Group, it was to fill the position with someone younger than 35.  Specific goals of having a certain number of younger employees in management positions were stated in writing by the US Strategic Human Resources Committee and communicated to every store throughout the United States.  The goals have been spoken of and communicated in different ways, such as in terms of "age distribution goals," "succession," "potential" or "diversity."

    b.   IKEA US has tracked, monitored and reported on its age-biased personnel goals.

c.  IKEA US has had in place a long term strategy for recruiting and promoting younger people into management positions.

d.  IKEA US has had in place leadership development programs as part of a strategy to advance young employees into management positions.

e.  IKEA US has had in place a policy of identifying the "potential" of its employees as a proxy to assess promotability in an age-biased manner.

f.  IKEA US has undertaken recruiting efforts aimed at recruiting young individuals into management positions.

g.  IKEA US has implemented "reorganization" efforts, including one entitled "Organization for Growth" (a/k/a "O4G"), to eliminate older employees from management positions by, without limitation, terminating them, demoting them, or effectively forcing them out.

h.  IKEA US has had a promotions policy and/or practice that calls for the consideration of data on internal applicants for management positions, including their age.

i.  IKEA US has had a job selection process by which older qualified applicants seeking promotion are rejected without due consideration.

j.  IKEA US has had a job selection process by which older qualified applicants seeking promotion are precluded from consideration in favor of younger applicants.

k.  IKEA US subjects internal (generally older) applicants to requirements not imposed upon external (generally younger) applicants.

l.  IKEA US managers openly express age bias in favor of younger employees.

m.  IKEA US fails to remediate complaints of age discrimination, and thus promotes a culture in which discrimination against older employees is tolerated and encouraged.

n.  IKEA US has had in place programs explicitly aimed at promoting "young" talent and/or "young" potentials.

o.  IKEA US has expressly stated to all of its employees – including decision-makers, applicants, potential applicants, and those charged with complying with its stated anti-discrimination policies – that it is "looking for young talents."

14

p.  IKEA US openly flouts the ADEA by, without limitation, publicizing advertisements expressing a preference for "young" candidates, such as for its "Global Young Potentials Program."

q.  IKEA US considers willingness to relocate when screening candidates for all positions, including those that would not entail relocation, with the intention of discouraging applications from and/or eliminating from consideration its older employees.  Further, to the extent that a relocation requirement does not discourage or eliminate older applicants, IKEA US may rescind offers of domestic relocation assistance to dissuade older applicants.  Similarly, IKEA US will close a position, and repost it to offer relocation assistance in order to attract younger candidates.

r.  IKEA US conducts sham interviews of older employees to provide a cover or plausible deniability for age discrimination.

s.  IKEA US has engaged in deceptive practices to try to conceal the effects of its age discrimination.  For example, and without limitation, managers select younger employees for positions that are not officially posted and recorded in the company's data, and the company sometimes "closes" certain job postings and then "re-posts" them under different requisition numbers.

t.  IKEA US has engaged in deceptive practices to try to avoid the consequences of its age discrimination.  For example, and without limitation, through O4G, employees were assigned "new" roles within the company. These "new" roles guaranteed base pay protection for IKEA employees through December 31, 2018. However, following December 31, 2018, if the "new" assigned position came with a lower pay grade, the employees pay would then be reduced accordingly. Upon information and belief, this was a scheme intended to harm older employees by removing them from management positions while lulling and/or deceiving them into foregoing their rights to pursue age discrimination claims past the 300 day federal charge filing deadlines.

u.  IKEA US instructs its Human Resources and recruiting managers to consider age in making employment decisions.

v.  IKEA US, under the guise of "diversity," sets goals to have younger employees in management positions and/or promotes age "balance" in the workforce.

w.  IKEA US  intentionally fails to promote older employees because of their age.

x.  IKEA US fails to promote older employees because of their age.

94.     Since February 12, 2018, at least six current or former employees of IKEA US have filed age discrimination lawsuits against Defendants in the United States District Courts, alleging, among other things, that IKEA operating in the US considers age in its employment decisions and acts upon its openly expressed preference in favor of younger employees to the detriment of its older employees.   The captions of these lawsuits are as follows:

     a.  *Donofrio v. IKEA US Retail, LLC* (E.D. Pa. No. 2:18-cv-00599-AB) (Feb. 12, 2018);

     b.  *Parker v. IKEA North America Services, LLC* (E.D. Pa. 2:18-cv-03261-AB) (Aug. 1, 2018);

     c.  *Gorbeck v. IKEA North America Services, LLC, et al.* (E.D. Pa. 2:18-cv-00599-AB) (Aug. 27, 2018);

     d.  *Nasci v. IKEA North America Services, LLC* (W.D. Pa. 2:18-cv-01643-CB) (Dec. 10, 2018);

     e.  *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 -AB)(Feb. 21, 2019); and

     f.  *Antonelli, Jr. v. IKEA Holding US, Inc. et al.* (E.D. Pa. 2:19-cv-01286-AB) (March 27, 2019).

95.     The *Donofrio, Antonelli*, and *Paine* cases are ADEA representative collective actions that have been conditionally certified by this Court and are now pending.

96.     In its May 15, 2019, Memorandum accompanying its Order to conditionally certify *Donofrio* (2:18-cv-00599 at ECF 70), the Court stated, among other things:

- "Donofrio has put forth testimonial evidence that IKEA employees that were tasked with promotion decision-making were aware of and took into consideration what they perceived to be a broad organizational preference for the promotion of young employees to management positions." *Id.* at p. 6.

- "Donofrio also presents evidence that IKEA tracked the ages of its management personnel beginning in 2012 and continuing thereafter." *Id.* at p. 7.

- "…Donofrio presents evidence to substantiate his allegation that IKEA had a potentially discriminatory 'succession planning' policy in relation to promotion decision-making." *Id.*

- "Donofrio also presents evidence that IKEA used 'potential' ratings as a proxy for age-based assessments of promotability." *Id.* at p. 8.

- "…Donofrio presents evidence that IKEA's policies had a nationwide scope…" *Id.*

97.     IKEA US has taken no steps to address its age discriminatory policies and practices as alleged and substantiated in *Donofrio* or otherwise.

98.     IKEA US has continued its age discriminatory policies and practices as alleged and substantiated in *Donofrio* or otherwise.

99.     For example, and without limitation, IKEA US has not changed its "Promotions & Transfer" policy; IKEA US continues to express a broad organizational preference for the promotion of young employees into management position that decision-makers are aware of and consider in selection decisions; IKEA US continues to track the ages of its management personnel; IKEA US continues to engage in age discriminatory succession planning with the intention of building a "bench" or "pipeline" of young employees as future leaders; IKEA US continues to use "potential" as a proxy for age-biased assessments of promotability; IKEA US continues its efforts to attract young candidates by, for example, advertising on its Intranet that it is looking for "fresh" talent; and IKEA US continues to unlawfully consider age in its employment decisions under the guise of "diversity."

100.    IKEA US's employment policies and/or practices are infected with age bias from the top down and infuse all aspects of its employment decisions.

101.    IKEA US's policies infected with age bias, its corporate culture of age bias, its open expression of considering age in employment decisions, and/or its openly expressed preference for developing and/or selecting younger employees as its future leaders, affect the

17

employment decisions made by IKEA US and adversely affects IKEA US's older employees, including Plaintiffs LuCinda Branson, Evan Ganz, Darlene Hughes, Thomas Isaak, Monica Rausert, Barbara Rose, and Jack Shannon.

102.    Since the time periods at issue in *Donofrio, Antonelli* and *Paine*, IKEA US has continued to engage in a pattern and practice of age discrimination, including its general and pervasive corporate policy of preferring young candidates for promotion, that has adversely affected its older employees, including Plaintiffs LuCinda Branson, Evan Ganz, Darlene Hughes, Thomas Isaak, Monica Rausert, Barbara Rose, and Jack Shannon.

103.    Since the time periods at issue in *Donofrio, Antonelli* and *Paine*, IKEA US has rejected for promotion older employees, including Plaintiffs LuCinda Branson, Evan Ganz, Darlene Hughes, Thomas Isaak, Monica Rausert, Barbara Rose, and Jack Shannon, because of their age.

104.    Since the time periods at issue in *Donofrio, Antonelli* and *Paine*, IKEA US has intentionally discriminated against Plaintiffs LuCinda Branson, Evan Ganz, Darlene Hughes, Thomas Isaak, Monica Rausert, Barbara Rose, and Jack Shannon because of their age.

105.    In the alternative, since the time periods at issue in *Donofrio, Antonelli* and *Paine*, to the extent that Defendants' facially neutral employment policies and practices have not been used by Defendants to discriminate intentionally, the continued use of one or more of each has resulted in a disparate impact against older employees, including Plaintiffs LuCinda Branson, Evan Ganz, Darlene Hughes, Thomas Isaak, Monica Rausert, Barbara Rose, and Jack Shannon, as follows:

        a.   Upon information and belief, Defendants' assessment and identification of the potential of its employees has resulted in a statistically significant disparity in the promotion rates of its older employees.

b.  Upon information and belief, Defendants' policies regarding relocation have resulted in a statistically significant disparity in the promotion rates of its older employees.

### Plaintiff Lucinda Branson

106.    IKEA US hired Plaintiff Branson on or about June 11, 2007, as a Goods Flow Manager to work in Defendants' College Park, Maryland store.

107.    In or around 2013, Plaintiff Branson transitioned to the position of Self-Serve Shopkeeper.

108.    Throughout her employment with IKEA US, Plaintiff Branson has performed her duties in a highly competent manner and has received positive feedback.  For example, and without limitation, her Performance Review for the 2018/2019 cycle noted that "[Plaintiff] is committed to the business and it's [sic] need and is planning a business structure which will be utilized on the salesfloor and one day in our community."

109.    Defendants' pattern and practice of age discrimination, including its general and pervasive policy of preferring younger candidates for promotion, has adversely affected Plaintiff Branson's advancement in the company.

110.    Among other things, Plaintiff Branson has been told that Defendants are looking for the "next generation of leaders."

111.    Plaintiff Branson applied for promotion from her Shopkeeper position to higher level management roles for which she was qualified.  Defendants rejected her applications because of her age and selected instead substantially younger applicants.  Without limitation:

a.  In or about September 2016, Plaintiff Branson, at age 59, applied for promotion to the Knowledge Management and Insights Manager position at Defendants' Human Resources Support Center ("HRSC") in Baltimore, Maryland. Defendants rejected Plaintiff Branson's application and, upon information and belief, selected for the position Benjamin Fauer (estimated age 25).

19

b.  In or about April 2017, Plaintiff Branson applied for promotion to the Preparation and Flow Manager position in Defendants' College Park, Maryland store. Defendants rejected Plaintiff Branson's application and selected for the position James Smith (estimated age 35).

112.  In or about September 2017, in anticipation of O4G's reassignment of roles, Plaintiff Branson applied for the Workers' Compensation Specialist position in Defendants' HRSC in Baltimore, Maryland.  Defendants rejected her application because of her age and, upon information and belief, selected for the position Margo Walker (estimated age 32).

113.  In connection with O4G, in or about October 2017, IKEA US demoted Plaintiff Branson from Self-Serve Shopkeeper, which was a management position, to Active Selling Kitchens Leader, which was a management support level position with lower compensation.

114.  IKEA US did not demote Plaintiff Branson because of any alleged poor performance.

115.  IKEA US demoted Plaintiff Branson because of her age.

116.  When Plaintiff Branson voiced her displeasure about her demotion to Frank Briel (estimated age 61), Store Manager at College Park, Mr. Briel told her not to worry because she would be retiring soon.

117.  To the best of Plaintiff Branson's knowledge and belief, during Defendants' alleged reorganization, only one employee over age 50 was allowed to remain on the College Park store management team. All other employees over age 50 that had been on the store management team were removed.

118.  Since her demotion, Plaintiff Branson has several times applied for promotion to positions for which she was qualified, but has been rejected because of her age.  Without limitation:

a.  In or about December 2017, Plaintiff Branson, at age 60, applied for promotion to the Knowledge Management and Insights Manager position located in Defendants' HRSC in Baltimore, Maryland.  Notwithstanding her qualifications, Defendants rejected Plaintiff Branson's application and continued to look for other candidates to fill the position.

b.  In or about December 2017, Plaintiff Branson applied for promotion to the Customer Resolution Manager position in Defendants' Customer Service Center ("CSC") in Baltimore, Maryland. Notwithstanding her qualifications, Defendants rejected Plaintiff Branson's application and continued to look for other candidates to fill the position.

c.  On or about February 21, 2018, Plaintiff Branson applied for promotion to the Customer Service Manager position in Defendants' Woodbridge, Virginia store. Notwithstanding her qualifications, Defendants rejected Plaintiff Branson's application and, upon information and belief, selected for the position Joyce Garcia (age 34).

d.  On or about June 5, 2018, Plaintiff Branson applied for promotion to the Customer Service Manager position in Defendants' Baltimore, Maryland store.  Notwithstanding her qualifications, Defendants rejected Plaintiff Branson's application and, upon information and belief, selected for the position Alex Banos (estimated age 32).

e.  In or about June 2018, Plaintiff Branson applied for promotion to the Customer Experience Manager position in Defendants' Baltimore, Maryland store.   Notwithstanding her qualifications, Defendants rejected Plaintiff Branson's application and selected for the position Brianna Mickle (estimated age 30).

f.  On or about August 14, 2018, Plaintiff Branson applied for promotion to the Unit Staff Planning Coordinator position in Defendants' College Park, Maryland store.  Notwithstanding her qualifications, Defendants rejected Plaintiff Branson's application and, upon information and belief, selected for the position Kayla Coleman (estimated age 29).

g.  On or about April 29, 2019, Plaintiff Branson applied for promotion to the Co-Worker Relations position in Defendants' College Park, Maryland store. Notwithstanding her qualifications, Plaintiff Branson learned in or about January, 2020, that she did not get the job.

119.   Upon information and belief, Defendants' rejection of Plaintiff Branson for one or more of the positions identified in Paragraph 118 is the basis for Plaintiff Branson's eligibility to participate as an opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-

00723 (AB)).  Based on the date on which Plaintiff Branson learned of her rejection to the Co-Worker Relations position, this rejection was also addressed on a timely basis by Plaintiff Branson's Charge of Discrimination and, to the extent not covered by the *Paine* representative action, is addressed herein.

120.    Defendants have not addressed or remediated IKEA's age discrimination as alleged in the representative action lawsuits brought against the company.  On the contrary, IKEA US has continued its pattern and practice of age discrimination, including its policy of preferring younger candidates for promotion, to the detriment of Plaintiff Branson.

121.    On or about June 27, 2019, Plaintiff Branson, at age 61, applied for promotion to the Customer Service Manager position in Defendants' Woodbridge, Virginia store.

122.    Plaintiff Branson was qualified for the Customer Service Manager position.

123.    Plaintiff Branson learned on or about July 24, 2019, that she had been rejected for the Customer Service Manager position.

124.    IKEA US selected for the Customer Service Manager position Abdellatif Boussak (age 31).

125.    Plaintiff Branson was at least as, if not more, qualified than Mr. Boussak because of, without limitation, her experience.

126.    Defendants failed to promote Plaintiff Branson to the Customer Service Manager position because of her age.

127.    On or about June 27, 2019, Plaintiff Branson, at age 61, applied for promotion to the Unit Staff Planning Specialist position in Defendants' Baltimore, Maryland store.

128.    Plaintiff Branson was qualified for the Unit Staff Planning Specialist position.

129.    Or about September 2019, Plaintiff Branson learned that she had been rejected for the Unit Staff Planning Specialist position in Defendant's Baltimore, Maryland store.

130.    IKEA US selected for the Unit Staff Planning Specialist position Stewart Reed (estimated age 49).

131.    Plaintiff Branson was at least as, if not more, qualified for the position than Mr. Reed because of, without limitation, her experience.

132.    Defendants failed to promote Plaintiff Branson to the Unit Staff Planning Specialist position because of her age.

133.    In or about February 2020, Plaintiff Branson, at age 62, applied for promotion to the Retail Store Commercial Manager position in Defendants' College Park, Maryland store.

134.    Plaintiff Branson was qualified for the Retail Store Commercial Manager position.

135.    Notwithstanding her qualifications, IKEA US did not even interview Plaintiff Branson for the position.

136.    Robert Neale (age 40), Customer Service Manager, told Plaintiff Branson that he did not approve her moving forward with the interview process for the position.

137.    Mr. Neale explained Defendants' rejection of Plaintiff Branson's application for the Retail Store Commercial Manager position in thinly veiled, age biased terms.  Mr. Neale told Plaintiff Branson that the team needed "new energy," that he wanted "fresh ideas," "energy," and a "complete makeover" for the Customer Service Area.

138.    IKEA US selected for the Retail Store Commercial Manager position Shelby Watkins (estimated age 35).

139.    Plaintiff Branson was at least as, if not more, qualified for the position than Ms. Watkins because of, without limitation, her experience.

140.    Defendants failed to promote Plaintiff Branson to the Retail Store Commercial Manager position because of her age.

141.    In or about February 2020, Plaintiff Branson, at age 62, applied for promotion to the Customer Service Manager position in Defendants' Baltimore, Maryland store.

142.    Plaintiff Branson was qualified for the Customer Service Manager position.

143.    On or about March 26, 2020, Plaintiff Branson learned that she had been rejected for the Customer Service Manager position in Defendants' Baltimore, Maryland store.

144.    IKEA US selected for the Customer Service Manager position Yolanda Keck (estimated age 36).

145.    Plaintiff Branson was at least as, if not more, qualified for the position than Ms. Keck because of, without limitation, her experience.

146.    Defendants failed to promote Plaintiff Branson to the Customer Service Manager position because of her age.

147.    As a direct and proximate result of the age discriminatory and unlawful conduct of Defendants in failing to promote and rejecting Plaintiff Branson for the Co-Worker Relations, Customer Service Manager, Unit Staff Planning, Retail Store Commercial Manager, and Customer Service Manager positions, Plaintiff Branson has in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

148.    Defendants' conduct in failing to promote and rejecting Plaintiff Branson for Co-Worker Relations, Customer Service Manager, Unit Staff Planning, Retail Store Commercial Manager, and Customer Service Manager positions was willful and intentional under the circumstances.

149.    Defendants' conduct in failing to promote and rejecting Plaintiff Branson for these positions was a conscious and deliberate wrongdoing, with evil intent, and intended to injure Plaintiff Branson.

### Plaintiff Evan Ganz

150.    IKEA US hired Plaintiff Ganz on or about April 29, 2017, as a Sofas Co-Worker to work in Defendants' Elizabeth, New Jersey store.

151.    Throughout his employment with IKEA US, Plaintiff Ganz has performed his duties in a highly competent manner and has received positive feedback. For example, and without limitation, he received the rating of "Exceeds Expectations" for the Performance P&D Cycle 18.

152.    Defendants' pattern and practice of age discrimination, including its general and pervasive corporate policy of preferring younger candidates for promotion, has adversely affected Plaintiff Ganz's advancement in the company.

153.    Plaintiff Ganz several times applied for promotion to positions for which he was qualified, but has been rejected because of his age.  Without limitation:

    a.    On or about July 25, 2017, Plaintiff Ganz, at age 44, applied for promotion to the Active Selling Leader position in Defendants' Elizabeth, New Jersey store. Notwithstanding his qualifications, Defendants rejected Plaintiff Ganz's application and selected for the position Lauren ___ (estimated age 25).

    b.    In or about November 2017, Plaintiff Ganz applied for promotion to the Active Selling Leader position in Defendants' Paramus, New Jersey store.

Notwithstanding Plaintiff Ganz's qualifications, Defendants rejected Plaintiff Ganz's application and continued to look for candidates to fill the position.

c. On or about February 20, 2018, Plaintiff Ganz applied for promotion to the Customer Service Leader position in Defendants' Elizabeth, New Jersey store. Notwithstanding his qualifications, Defendants rejected Plaintiff Ganz's application and selected for the position Jasmine Thomas (age 30).

d. On or about May 11, 2018, Plaintiff applied for promotion to the Active Selling Leader position in Defendants' Paramus, New Jersey store. Defendants rejected Plaintiff Ganz's application and selected for the position the less experienced, substantially younger Noel Diaz (age 27).

e. In or about June 2018, Plaintiff Ganz applied for promotion to the Active Selling Leader in Defendants' Elizabeth, New Jersey store.  Notwithstanding his qualifications, Defendants rejected Plaintiff Ganz's application and, upon information and belief, selected for the position Michael Murphy (age 33).

f. In or about June 2018, Plaintiff applied for promotion to the Customer Service Leader position in Defendants' Paramus, New Jersey store.  Notwithstanding Plaintiff Ganz's qualifications, Defendants rejected his application and continued to look for someone to fill the position.

154.    Upon information and belief, Defendants' rejection of Plaintiff Ganz for promotion to one or more of the positions identified in Paragraph 153 (a) – (b), is the basis for Plaintiff Ganz' eligibility to participate as an opt-in plaintiff in *Donofrio v. IKEA US Retail, LLC* (E.D. Pa. 2:18-cv-00599 (AB)), and Defendants' rejection of Plaintiff Ganz for promotion to one or more of the position identified in Paragraph 153 (c)-(f) is the basis for Plaintiff Ganz's eligibility to participate as an opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)), and *Antonelli v. IKEA Holding US, Inc.* (E.D. Pa. 2:19-cv-01286 (AB)).

155.    Defendants have not addressed or remediated IKEA's age discrimination as alleged in the representative actions lawsuits brought against the company.  On the contrary, IKEA US has continued its pattern and practice of age discrimination, including its policy of preferring younger candidates for promotion, to the detriment of Plaintiff Ganz.

26

156.    In or about August 2019, Plaintiff Ganz, at age 46, applied for promotion to the Active Selling Kitchen & Bath Specialist position in Defendants' Paramus, New Jersey store.

157.    Plaintiff Ganz was qualified for the Active Selling Kitchen & Bath position.

158.    In or about August 2019, Plaintiff Ganz learned that he had been rejected for the Active Selling Kitchen & Bath Specialist position.

159.    IKEA US selected for the Active Selling Kitchen & Bath Specialist position Jodian Sutherland-Stokes (age 28).

160.    Plaintiff Ganz was at least as, if not more, qualified than Ms. Sutherland-Stokes because of, without limitation, his experience.

161.    Defendants failed to promote Plaintiff Ganz to the Active Selling Kitchen & Bath Specialist position because of his age.

162.    In or about August 2019, Plaintiff Ganz, at age 46, applied for promotion to the Active Selling Leader position in Defendants' Elizabeth, New Jersey store.

163.    Plaintiff Ganz was qualified for the Active Selling Leader position.

164.    Plaintiff Ganz's interviewed for the Active Selling Leader position in Defendants' Elizabeth, New Jersey store, with Ruth Richards (age 48).  During the interview, and notwithstanding his qualifications, Ms. Richards discouraged Plaintiff Ganz from pursuing the position and advised him that Defendants already had other individuals in mind for the position.

165.    In or about October 2019, Plaintiff Ganz learned that he had been rejected for the Active Selling Leader position in Defendants' Elizabeth, New Jersey store. IKEA US selected for the Active Selling Leader position Stephen Brown (estimated age 35).

166.    Plaintiff Ganz was at least as, if not more, qualified for the position than Mr. Brown because of, without limitation, his experience.

27

167.    Defendants failed to promote Plaintiff Ganz to the Active Selling Leader position in Defendants' Elizabeth, New Jersey store because of his age.

168.    In or about January 2020, Plaintiff Ganz, at age 47, applied for promotion to the Active Selling Leader position in Defendants' Paramus, New Jersey store.

169.    Plaintiff Ganz was qualified for the Active Selling Leader position.

170.    On or about February 12, 2020, Plaintiff Ganz learned that he had been rejected for the Active Selling Leader position in Defendants' Paramus, New Jersey store.

171.    Defendants failed to promote Plaintiff Ganz to the Active Selling Leader position because of his age.

172.    As a direct and proximate result of the age discriminatory and unlawful conduct of Defendants in failing to promote and rejecting Plaintiff Ganz for the Active Selling Kitchen & Bath Specialist, Active Selling Leader (Elizabeth), and Active Selling Leader (Paramus) positions, Plaintiff Ganz has in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

173.    Defendants' conduct in failing to promote and rejecting Plaintiff Ganz for the Active Selling Kitchen & Bath Specialist, Active Selling Leader (Elizabeth), and Active Selling Leader (Paramus) positions was intentional and willful under the circumstances.

174.    Members of upper management of Defendants had actual participation in, or willful indifference to, the unlawful acts of age discrimination alleged herein.

28

**Plaintiff Darlene Hughes**

175.    IKEA US hired Plaintiff Hughes on or about January 30, 2016 to work as a Goods

Flow Co-Worker in Defendants' Philadelphia, Pennsylvania store.

176.     Throughout her employment, Plaintiff Hughes has consistently demonstrated

positive performance and has performed her duties in a highly competent manner.  For example,

and without limitation, she has received positive performance reviews and has been recognized

as a "Co-Worker of the Month."

177.    Defendants' pattern and practice of age discrimination, including its general and

pervasive corporate policy of preferring younger candidates for promotion, has adversely

affected Plaintiff Hughes' advancement in the company.

178.    Plaintiff Hughes several times applied for promotion to positions for which she

was qualified, but has been rejected because of her age.  Without limitation:

    a.    In or about December 2016, Plaintiff Hughes, at age 47, applied for promotion to
the Preparation and Flow Team Leader position.  Notwithstanding her
qualifications, Defendants rejected Plaintiff Hughes's application and, upon
information and belief, selected for the position Derek Legendre (estimated age
29).

    b.    In or about February 2019, Plaintiff Hughes, at age 49, applied for promotion to
the Logistics Team Leader position.  Notwithstanding her qualifications,
Defendants rejected Plaintiff Hughes' application and, upon information and
belief, selected for the position Jacqueline Gdowik (age 29), Patrick DeFabio
(estimated age 27) and Guillermo Roche-Curet (age 29).

179.    Upon information and belief, Defendants' rejection of Plaintiff Hughes for

promotion to the position identified in Paragraph 178 (a) is the basis for Plaintiff Hughes'

eligibility to participate as an opt-in plaintiff in *Donofrio v. IKEA US Retail, LLC* (E.D. Pa. 2:18-

cv-00599 (AB)), and Defendants' rejection of Plaintiff Hughes for promotion the position

identified in Paragraph 178 (b) is the basis for Plaintiff Hughes' eligibility to participate as an

opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)), and *Antonelli v. IKEA Holding US, Inc.* (E.D. Pa. 2:19-cv-01286 (AB)).

180.     Defendants have not addressed or remediated IKEA's age discrimination as alleged in the representative action lawsuits brought against the company.  On the contrary, IKEA US has continued its pattern and practice of age discrimination, including its policy of preferring younger candidates for promotion, to the detriment of Plaintiff Hughes.

181.     In or about August 2019, Plaintiff Hughes, at age 50, applied for promotion to the Preparation and Flow Leader position.

182.     Plaintiff Hughes was qualified for the Preparation and Flow Leader position.

183.     On or about October 31, 2019, Plaintiff Hughes learned that she had been rejected for the Preparation and Flow Leader position.

184.     Notwithstanding her qualifications, IKEA US rejected Plaintiff Hughes for the Preparation and Flow Leader position after she was interviewed by five different individuals.

185.     Plaintiff Hughes is unaware of any other younger applicant at Defendants' Philadelphia, Pennsylvania store who was interviewed by five individuals for a position.

186.     Defendants subjected Plaintiff Hughes to a more stringent application and interview process than similarly situated younger employees, and did so because of her age.

187.     Defendants failed to promote Plaintiff Hughes to the Preparation and Flow Leader position because of her age.

188.     On or about October 31, 2019, IKEA US offered Plaintiff Hughes the position of Interim Preparation and Flow Leader as a limited assignment ending on January 5, 2020.

189.    Plaintiff Hughes understood from Defendants that the Interim Preparation and Flow Leader position would convert into a permanent Preparation and Flow Leader position after January 5, 2020 if her performance was satisfactory.

190.    On or about November 10, 2020, Plaintiff Hughes began serving as the Interim Preparation and Flow Leader at Defendants' store in Philadelphia, Pennsylvania.

191.    Plaintiff Hughes performed this position in a satisfactory manner and received no negative performance appraisals or feedback.

192.    After January 5, 2020, Plaintiff Hughes understood – based on Defendants' representation – that the position had become permanent and that she now held the Preparation and Flow Leader position at Defendants' store in Philadelphia, Pennsylvania.

193.    On or about January 9, 2020, Plaintiff Hughes filed a Consent to Join Form and joined the *Donofrio v. IKEA* age discrimination collective action lawsuit as an opt-in plaintiff.

194.    On or about February 3, 2020, Plaintiff Hughes learned that she had been rejected for the permanent Preparation and Flow Leader position.

195.    IKEA US selected for the Preparation and Flow Leader position Ms. Gdowik (age 30).

196.    Plaintiff Hughes was more qualified for the position than Ms. Gdowik because, without limitation, her experience and the fact that she had successfully performed the job on an interim basis.

197.    Defendants failed to promote Plaintiff Hughes to the Preparation and Flow Leader position on a permanent basis because of her age and/or in retaliation for engaging in protected activity by opting-in as a plaintiff to the *Donofrio* collective action lawsuit.

198.     As a direct and proximate result of the age discriminatory and retaliatory unlawful conduct of Defendants in failing to promote Plaintiff Hughes from a coworker to the Preparation and Flow Leader position but making her instead an "Interim Preparation and Flow Leader," and failing to promote her from an interim position to a full-fledged Preparation and Flow Leader, Plaintiff Hughes has in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

199.     Defendants' conduct in failing to promote Plaintiff Hughes from a coworker to the Preparation and Flow Leader position but making her instead an "Interim Preparation and Flow Leader," and failing to promote her from an interim position to a full-fledged Preparation and Flow Leader was intentional and willful under the circumstances.

200.     In retaliating against Plaintiff Hughes, Defendants acted with malice or reckless indifference to Plaintiff Hughes' federally protected rights.

**<u>Plaintiff Thomas Isaak</u>**

201.     IKEA US hired Plaintiff Isaak on or about August 28, 2012 as a Self-Serve Manager in Defendants' Sunrise, Florida store.

202.     Throughout his employment with IKEA US, Plaintiff Isaak has consistently performed his job duties in a highly competent manner, demonstrated dedication to IKEA, and received positive feedback for his contributions.  For example, and without limitation, he received the rating of "Meets Expectations" every year of his employment with IKEA US, with the exception of 2013 when he received the rating of "Exceeds Expectations," and he has successfully led warehouse remodels in IKEA Florida stores to increase capacity for inventory.

203.    Defendants' pattern and practice of age discrimination, including its general and pervasive corporate policy of preferring younger candidates for promotion, has adversely affected Plaintiff Isaak's advancement in the company.

204.    In or about January 3, 2016, Plaintiff Isaak transferred to the Self-Serve Manager position in Defendants' Orlando, Florida store.

205.    In connection with O4G, in or about October 2017, IKEA US demoted Plaintiff Isaak (then age 44) from Self-Serve Manager, which was a salaried management position, to Preparation and Flow Leader, which was an hourly management support level position with lower compensation.

206.    IKEA US did not demote Plaintiff Isaak because of any alleged poor performance.

207.    IKEA US demoted Plaintiff Isaak because of his age.

208.    Since his demotion, Plaintiff Isaak applied for promotion to managerial positions several times, and applied for same level positions at different stores in an effort to advance his career.  Defendants have rejected because of his age Plaintiff Isaak's application to positions for which he was qualified and applied.  Without limitation:

   a.   On or about September 5, 2017, at age 44, Plaintiff Isaak applied for a Preparation and Flow Manager position in IKEA US's Seattle, Washington store. Notwithstanding his qualifications, Defendants rejected Plaintiff Isaak's application and selected for the position an applicant who is believed to be approximately age 35.

   b.   On or about October 9, 2017, at age 44, Plaintiff Isaak applied for an Active Selling Leader position in IKEA US's Tempe, Arizona store. Notwithstanding his qualifications, Defendants rejected Plaintiff Isaak's application and selected for the position Alyson Kawam (age 27).

   c.   On or about January 26, 2018, at age 45, Plaintiff Isaak applied for a Preparation and Flow Leader position in IKEA US's Tempe, Arizona store.

Notwithstanding his qualifications, Defendants rejected Plaintiff Isaak's application and selected for the position Katie Totman (age 26).

d.  In or around January of 2018, at age 45, Plaintiff Isaak applied for a Preparation and Flow Manager position in IKEA US's Miami, Florida store. Notwithstanding his qualifications, Defendants rejected Plaintiff Isaak's application and selected for the position Giselle Jadusindih (estimated age 31).

e.  On or about February 1, 2018, at age 45, Plaintiff Isaak applied for a Preparation and Flow Manager – Logistics position in IKEA US's Atlanta, Georgia store. Notwithstanding his qualifications, Defendants rejected Plaintiff Isaak's application and selected for the position Gregory Rene (age 40).

f.  In or around January or February of 2018, at age 45, Plaintiff Isaak applied for a Preparation and Flow Manager position in IKEA US's Sunrise, Florida store. Notwithstanding his qualifications, Defendants rejected Plaintiff Isaak's application and is believed to have selected for the position a substantially younger applicant.

g.  On or about April 10, 2018, at age 45, Plaintiff Isaak applied for a Preparation and Flow Leader position in IKEA US's Tempe, Arizona store. Notwithstanding his qualifications, Defendants rejected Plaintiff Isaak's application and selected for the position Brittany Rooyakkers (age 26).

h.  On or about April 11, 2018, at age 45, Plaintiff Isaak applied for an External Service Provider Manager position in IKEA US's Tampa, Florida location. Notwithstanding his qualifications, Defendants rejected Plaintiff Isaak's application and is believed to have selected for the position a substantially younger applicant.

i.  On or about May 8, 2018, at age 45, Plaintiff Isaak applied for a Preparation and Flow Leader position in IKEA US's Tempe, Arizona store. Notwithstanding his qualifications, Defendants rejected Plaintiff Isaak's application and selected for the position Caleb Rice (age 30).

j.  On or about May 24, 2018, at age 45, Plaintiff Isaak applied for a Customer Service Manager position in IKEA US's Tempe, Arizona store. Notwithstanding his qualifications, Defendants rejected Plaintiff Isaak's application and, it is believed, continued to look for someone to fill the position and/or selected a substantially younger applicant.

k.  In or around May of 2018, at age 45, Plaintiff Isaak applied for a Field Retail Supply Integration Advisor position in IKEA US's Orlando, Florida store. Notwithstanding his qualifications, Defendants rejected Plaintiff Isaak's

application and, it is believed, continued to look for someone to fill the position and/or selected a substantially younger applicant.

l.   In or around July of 2018, at age 45, Plaintiff Isaak applied for an Active Selling Manager position in IKEA US's Tempe, Arizona location. Notwithstanding his qualifications, Defendants rejected Plaintiff Isaak's application and, it is believed, continued to look for someone to fill the position and/or selected a substantially younger applicant.

209.   Upon information and belief, Defendants' rejection of Plaintiff Isaak for one or more of the positions identified in paragraphs 208 (d) – (l)  is the basis for Plaintiff Isaak's eligibility to participate as an opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)).

210.   Defendants have not addressed or remediated IKEA US's age discrimination as alleged in the representative action lawsuits brought against the company.  On the contrary, IKEA US has continued its pattern and practice of age discrimination, including its policy of preferring younger candidates for promotion, to the detriment of Plaintiff Isaak.

211.   On or about February 23, 2019, Plaintiff Isaak transferred to IKEA's Draper, Utah store in the position of Product Quality Leader in IKEA's Draper, Utah store.

212.   On or about September 16, 2019, at age 46, Plaintiff Isaak applied for a Sales and Supply Support Manager position at IKEA US's Draper, Utah store.

213.   Plaintiff Isaak was qualified for the Sales and Supply Support Manager position.

214.   On or about October 21, 2019, Plaintiff Isaak learned that he would not get the job.

215.   IKEA US selected for the position Aaron Ellison (estimated age 33).

216.     Plaintiff Isaak was better qualified, for the Sales and Supply Support Manager position than Ellison.  Without limitation, and among other things, Plaintiff Isaak had previously worked as an IKEA manager, and Ellison had not.

217.     IKEA US rejected Plaintiff Isaak for promotion to the Sales and Supply Support Manager position because of his age.

218.     In or around January, 2020, at age 46, Plaintiff Isaak applied for a Preparation and Flow Leader position in IKEA US's Tempe, Arizona store.

219.     Plaintiff Isaak was qualified for the Preparation and Flow Leader position.

220.     Notwithstanding Plaintiff Isaak's qualifications, IKEA US rejected Plaintiff Isaak's application and continued to look for other candidates to fill the position.

221.     As a direct and proximate result of the age discriminatory and unlawful conduct of Defendants in failing to promote Plaintiff Isaak and rejecting him for the Sales and Supply Support Manager position, Plaintiff Isaak has in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, and other injuries, the full extent of which is not known at this time.

222.     Defendants' conduct in failing to promote Plaintiff Isaak and rejecting him for the Sales and Supply Support Manager position was intentional and willful under the circumstances.

**Plaintiff Monica Rausert**

223.     IKEA US hired Plaintiff Rausert on or about August 29, 2011, as a Temporary Coworker in the Textiles Department in IKEA US's Centennial, Colorado store.

224.     Throughout her employment, Plaintiff Rausert has consistently demonstrated excellent performance and dedication to IKEA US, has performed her duties in a highly competent manner, and received positive feedback for her contributions.  For example, and

without limitation, in 2018, IKEA US evaluated her performance as "Exceeds Expectations," the highest possible rating on a performance evaluation.

225.    Defendants' pattern and practice of age discrimination, including its general and corporate policy of preferring younger candidates for promotion, has adversely affected Plaintiff Rausert's advancement in the company.

226.    Plaintiff Rausert applied for promotion to several positions for which she was qualified, as well as a Development Program.  Defendants rejected Plaintiff Rausert's applications because of her age.  Without limitation:

    a.  On or about February 18, 2012, at age 45, Plaintiff Rausert applied for a Team Leader position in IKEA US's Centennial, Colorado store. Notwithstanding her qualifications, Defendants rejected Plaintiff Rausert's application and, it is believed, selected for the position a substantially younger applicant.

    b.  On or about February 9, 2014, at age 46, Plaintiff Rausert applied for a Sales Manager position in IKEA US's Centennial, Colorado store. Notwithstanding her qualifications, Defendants rejected Plaintiff Rausert's application and selected for the position Stephanie Grant (estimated age 31).

    c.  On or about July 27, 2017, at age 50, Plaintiff Rausert applied for an Active Selling Leader position in IKEA US's Centennial, Colorado store. Notwithstanding her qualifications, Defendants rejected Plaintiff Rausert's application and selected for the position Angie Palomino (age 37) and Robert Leach (age 45).

    d.  On or about December 10, 2018, at age 51, Plaintiff Rausert applied for an Inventory Specialist position in IKEA US's Centennial, Colorado store. Notwithstanding her qualifications, Defendants rejected Plaintiff Rausert's application and, it is believed, continued to look for a candidate and/or selected for the position a substantially younger applicant.

227.    Upon information and belief, Defendants' rejection of Plaintiff Rausert's application for the position identified in Paragraph 226 (c) is the basis for Plaintiff Rausert's eligibility to participate as an opt-in plaintiff in *Donofrio v. IKEA US Retail, LLC* (E.D. Pa. 2:18-cv-00599 (AB)), and Defendants' rejection of Plaintiff Rausert's application for the position

identified in paragraph 226 (d) is the basis for Plaintiff Rausert's eligibility to participate as an

opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)), and

*Antonelli v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-01286 (AB)).

228.    Defendants have not addressed or remediated IKEA's age discrimination as

alleged in the representative action lawsuits brought against the company.  On the contrary,

IKEA has continued its pattern and practice of age discrimination, including its policy of

preferring younger candidates for promotion, to the detriment of Plaintiff Rausert.

229.    On or about June 28, 2019, at age 51, Plaintiff Rausert applied for a People and

Culture Generalist position in IKEA US's Centennial, Colorado store.

230.    Plaintiff Rausert was qualified for the People and Culture Generalist position.

231.    IKEA US rejected Plaintiff Rausert's application and selected for the position

Angie Palomino (age 37).

232.    Plaintiff Rausert was better qualified for the People and Culture Generalist

position than Ms. Palomino.

233.    IKEA US rejected Plaintiff Rausert for promotion to the People and Culture

Generalist position because of her age.

234.    On or about October 28, 2019, at age 52, Plaintiff Rausert applied for one of two

open Active Selling Leader positions in IKEA US's Centennial, Colorado store.

235.    Plaintiff Rausert was qualified for each Active Selling Leader positions.

236.    Defendants rejected Plaintiff Rausert for both Active Selling Leader positions.

237.    IKEA US selected for the positions Adam Bell (age 25) and Ross Herrell (age

25).

238.    Plaintiff Rausert was better qualified for the Active Selling Leader positions than Mr. Bell and/or Mr. Herrell.

239.    IKEA US rejected Plaintiff Rausert for both Active Selling Leader positions because of her age.

240.    As a direct and proximate result of the age discriminatory and unlawful conduct of Defendants in failing to promote and rejecting Plaintiff Rausert for the People and Cultural Generalist and the two Active Selling Leader positions, Plaintiff Rausert has in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

241.    Defendants' failure to promote and rejecting Plaintiff Rausert for the People and Culture Generalist and the two Active Selling Leader positions was willful and intentional under the circumstances.

**Plaintiff Barbara Rose**

242.    IKEA US hired Plaintiff Rose on or about January 28, 2008, to work as a Human Resources Generalist in Defendants' College Park, Maryland store.

243.    Throughout her employment, Plaintiff Rose consistently performed her job duties in a highly competent manner, demonstrated dedication to IKEA, and received positive feedback for her contributions.  For example, and without limitation, in her Performance Review for the 2018/2019 cycle, it was noted that "[s]he has been doing a very good job with overall assignments in regard to CS" and "[Plaintiff] has great leadership capabilities."

244.     Defendants' pattern and practice of age discrimination, including its general and pervasive policy of preferring younger candidates for promotion, has adversely affected Plaintiff Rose's advancement in the company.

245.     In or about June 2016, in anticipation of O4G, IKEA told Plaintiff Rose that her current position, Human Resources, Generalist, was going to be eliminated.  As a result, Plaintiff Rose "transitioned down" to the Customer Service Team Leader position.

246.     Plaintiff Rose's compensation decreased by ten (10) percent in connection with this "transition."

247.     Plaintiff Rose received excellent performance reviews in her role as Customer Service Team Leader.  For example, and without limitation, in her 2017/2018 written performance evaluation, Plaintiff Rose's manager praised her, as follows:

> Barb has been an essential part of the Customer Service team during the O4G transition…Barb has maintained a positive attitude throughout the transition and has encouraged her peers and fellow coworkers to do the same…She has a wealth of HR knowledge that enables her to have those tough conversations that are important in keeping open communication with everyone. She played a major role in keeping everything a [sic] float during tough times.

248.     Since O4G, Plaintiff Rose has applied for promotion and a return to a Human Resources position for which she was well qualified, and has been rejected for these positions in favor of substantially younger, less qualified applicants.

249.     Plaintiff Rose in or about April, 2019, applied for promotion to a Learning Delivery Specialist position and in or about June 2019, applied for promotion to a People and Culture Generalist position.

250.     Upon information and belief,  Defendants' rejection of Plaintiff Rose for one or both of these positions is the basis for Plaintiff Rose's eligibility to participate as an opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)).

251.    Based upon the date on which Plaintiff Rose learned of her rejections, both of these actions were also addressed on a timely basis by Plaintiff Rose's Charge of Discrimination and, alternatively and to the extent not covered by the *Paine* representative action, are addressed herein.

252.    Defendants have not addressed or remediated IKEA's age discrimination as alleged in the representative action lawsuits brought against the company.  On the contrary, IKEA US has continued its pattern and practice of age discrimination to the detriment of Plaintiff Rose.

253.    In or about April 2019, Plaintiff, at age 53, applied for promotion to the Learning Delivery Specialist position in Defendants' College Park store.

254.    One of the primary job responsibilities of the Learning Delivery Specialist position was employees' training and onboarding experience.

255.    Plaintiff Rose was qualified for the Learning Delivery Specialist position.  Among other things, she had 22 years of Human Resources experience, 11 years of work experience with IKEA, and eight years of employees' training and onboarding experience at IKEA.

256.    Notwithstanding her qualifications, on or about September 2, 2019, Plaintiff Rose learned that she had been rejected for the Learning Delivery Specialist position.

257.    On or about September 11, 2019, Plaintiff Rose asked to be reconsidered for the Learning Delivery Specialist position because the position was going to be reposted. Defendants refused.

258.    IKEA US selected for the Learning Delivery Specialist position Natalie DiGiacomo (age 29).

259.     Plaintiff Rose was more qualified for the position than Ms. DiGiacomo in that, without limitation, Ms. DiGiacomo had approximately two (2) years of experience with IKEA whereas Plaintiff Rose had approximately eleven (11) years of experience with IKEA at the time, and, upon information and belief, Ms. DiGiacomo was working in IKEA's Loyalty department, a marketing and customer experience position with little to no relevance to the skills required for the Learning Delivery Specialist position.

260.     Defendants failed to promote Plaintiff Rose to the Learning Delivery Specialist position because of her age.

261.     In or about June 2019, Plaintiff Rose, at age 53, applied for promotion to the People and Culture Generalist position in Defendants' College Park store.

262.     Plaintiff Rose was qualified for the People and Culture Generalist position.

263.     Among other things, and without limitation, the People and Culture Generalist position was essentially the same role (*albeit* with a different title post-O4G) that Plaintiff excelled at as a Human Resources Generalist at College Park for more than eight years.

264.     In or about September 2019, Plaintiff Rose learned that, notwithstanding her qualifications, she had been rejected for the People and Culture Generalist position.

265.     Defendants failed to promote Plaintiff Rose to the People and Culture Generalist position because of her age.

266.     In or about September 2019, Plaintiff Rose asked Sanjay Kumar (estimated age 34), Store Manager at Defendants' College Park location, why she was rejected for the People and Culture Generalist position and told him that her interview feedback was inaccurate and unfair.

267.    Mr. Kumar informed Plaintiff Rose that she could interview again for the People and Culture Generalist position.

268.    On or about October 15, 2019, the People and Culture Generalist position was reposted.

269.    Mr. Kumar instructed Plaintiff Rose not to reapply for the position and told her that she would be considered.

270.    On or about December 10, 2019, Plaintiff Rose interviewed again with Jonathan Padmore (estimated age 30), for the People and Culture Generalist position.

271.    It was apparent to Plaintiff Rose that Mr. Padmore was not seriously considering her for the position.

272.    On or about December 31, 2019, Plaintiff Rose interviewed with Mr. Kumar for the People and Culture Generalist position.

273.    Mr. Kumar did not take a single note during Plaintiff Rose's interview.  It was apparent to Plaintiff Rose that Mr. Kumar was not seriously considering her for the position.

274.    On or about January 10, 2020, Plaintiff Rose learned that she had again been rejected for the People and Culture Generalist position.

275.    IKEA US hired for the position an external candidate, Sierra Adams (estimated age 28).

276.    Plaintiff Rose was more qualified for the position than Ms. Adams in that, without limitation, Plaintiff Rose had approximately twelve (12) years of experience with IKEA at the time and had previously held the People and Culture Generalist position for eight (8) years when it was called the Human Resources Generalist position.  Ms. Adams had far less Human Resources work experience, and no experience at IKEA.

277.    Defendants failed to promote and rejected Plaintiff Rose's two applications for the People and Culture Generalist position because of her age.

278.    After Plaintiff Rose was denied promotion to the People and Culture Generalist position, in or about January, 2000, Plaintiff Rose complained to Mr. Kumar of age discrimination.  She told him that she believed Mr. Padmore could not imagine her working alongside him as she had more experience than him and was old enough to be his mom.

279.    Although Mr. Kumar responded that Plaintiff Rose had given him a lot to think about, IKEA US did not address Plaintiff Rose's complaint.

280.    Defendants took no steps to investigate Plaintiff  Rose's complaint of age discrimination.

281.    As a direct and proximate result of the age discriminatory and unlawful conduct of Defendants in failing to promote and rejecting Plaintiff Rose for the positions of Learning Delivery Specialist and People and Culture General (twice), Plaintiff Rose has in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

282.    Defendants' conduct in failing to promote and rejecting Plaintiff Rose for the positions of Learning Delivery Specialist and People and Culture Generalist (twice), was willful and intentional under the circumstances.

283.    Defendants' conduct in failing to promote and rejecting Plaintiff Rose for these positions was a conscious and deliberate wrongdoing, with evil intent, and intended to injure Plaintiff Rose.

**Plaintiff Jack Shannon**

284.    IKEA US hired Plaintiff Shannon on or about September 11, 2017 to work as a Food Service Co-Worker in its Fishers, Indiana store.

285.    Throughout his employment, Plaintiff Shannon has consistently demonstrated excellent performance and dedication to IKEA, and has performed his duties in a highly competent manner.  For example, and without limitation, Defendants have selected Plaintiff Shannon to train other employees.

286.    Defendants' pattern and practice of age discrimination, including its general and pervasive corporate policy of preferring younger candidates for promotion, has adversely affected Plaintiff Shannon's advancement in the company.

287.    Plaintiff Shannon applied several times for promotion to positions for which he was qualified, but has been rejected because of his age.  Without limitation:

   a. On or about July 23, 2018, Plaintiff Shannon, at age 62, applied for promotion to the Active Selling Manager position. Notwithstanding his qualifications, Defendants rejected Plaintiff Shannon for the position and, it is believed, continued to look for someone to fill the position and/or selected for the position a substantially younger applicant.

   b. On or about August 28, 2018, Plaintiff Shannon applied for promotion to the Merchandising and Stock Leader position.  Notwithstanding his qualifications, Defendants rejected Plaintiff Shannon for the position and, it is believed, continued to look for someone to fill the position and/or selected for the position a substantially younger applicant.

   c. In or about May 2019, Plaintiff Shannon applied for promotion to the Retail Food Service Leader position.  Notwithstanding his qualifications, Defendants rejected Plaintiff Shannon for the position and selected for the position Johnathan Berry (age 36).

   d. In or about May 2019, Plaintiff Shannon applied for promotion to the Interim Customer Service Leader position. Notwithstanding his qualifications, Defendants rejected Plaintiff Shannon's application and, upon information and belief, selected for the position Karen Baum (age 33).

288.     Upon information and belief, Defendants' rejection of Plaintiff Shannon's application for one or more of the positions identified in Paragraph 287 is the basis for Plaintiff Shannon eligibility to participate as an opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)), and *Antonelli v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-01286 (AB)).

289.     Defendants have not addressed or remediated IKEA's age discrimination as alleged in the representative action lawsuits brought against the company.  On the contrary, IKEA US has continued its pattern and practice of age discrimination, including its policy of preferring younger candidates for promotion, to the detriment of Plaintiff Shannon.

290.     On or about October 15, 2019, Plaintiff Shannon, at age 63, applied for promotion to the Retail Facilities Leader position.

291.     The Retail Facilities Leader position required, among other things, resolving building maintenance and safety issues, partnering with Risk and Compliance Leaders to maintain vendor relationships and overseeing maintenance and repair of all the equipment.

292.     Plaintiff was qualified for the Retail Facilities Leader position because of, without limitation, his extensive experience in facilities.

293.     Prior to joining IKEA US, Plaintiff Shannon served as an Assistant Manager of the Terminal Services division of the Indianapolis Airport Authority.  In that role, he was responsible for directing clean-up and housekeeping for the entire Indianapolis Airport terminal, concourses and outer buildings.  He also oversaw the airport's Terminal Services Operation.

294.     Prior to joining IKEA US, Plaintiff Shannon also served as the General Manager at a janitorial and equipment company.  In that role, he was responsible for developing reporting platforms for operations, maintaining vendor relationships, and vehicle maintenance.  When

customer issues arose, Plaintiff Shannon addressed the issues directly and oversaw the repair of equipment.

295.    On or about October 31, 2019, Plaintiff Shannon learned that he had been rejected for the Retail Facilities Leader position.

296.    IKEA US selected for the Retail Facilities Leader position Terry Landroche (48).

297.    Plaintiff Shannon was at least as, if not more, qualified for the position than Mr. Landroche because of, without limitation, Plaintiff's experience.

298.    Defendants failed to promote Plaintiff Shannon to the Retail Facilities Leader position because of his age.

299.    Defendants' conduct was intentional and willful under the circumstances.

300.    As a direct and proximate result of the age discriminatory and unlawful conduct of Defendants in failing to promote and rejecting Plaintiff Shannon for the Retail Facilities Leader position, Plaintiff Shannon has in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, and other injuries, the full extent of which is not known at this time.

## COUNT I
### PLAINTIFFS BRANSON, GANZ, HUGHES, ISAAK, RAUSERT, ROSE, AND SHANNON AGAINST DEFENDANTS FOR AGE DISCRIMINATION (DISPARATE TREATMENT) IN VIOLATION OF THE ADEA

301.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

302.    Defendants failed to promote Plaintiffs to positions to which they were qualified and applied because of their age.

303.    Defendants have intentionally discriminated against Plaintiffs because of their age.

304.     Defendants have engaged in a pattern and practice of age discrimination against older employees, including Plaintiffs.

305.     Defendants have denied promotions to Plaintiffs because of their age.

306.     Age was a determinative factor in Defendants' failure to promote Plaintiffs.

307.     As a direct result of Defendants' age discriminatory conduct, Plaintiffs have in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, and other injuries, the full extent of which is not known at this time.

308.     Defendants, by the age discriminatory acts set forth herein, have violated the ADEA.

309.     Defendants' violation of the ADEA was intentional and willful under the circumstances and warrants the imposition of liquidated damages.

310.     As a direct and proximate result of Defendants' violation of the ADEA, Plaintiffs have sustained the injuries, damages, and losses set forth herein.

311.     Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' age discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

**COUNT II**
**PLAINTIFFS BRANSON, GANZ, HUGHES, ISAAK, RAUSERT,**
**ROSE, AND SHANNON AGAINST DEFENDANTS FOR AGE**
**DISCRIMINATION (DISPARATE IMPACT) IN VIOLATION OF THE ADEA**

312.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

313.     To the extent that Defendants' facially neutral employment policies and practices have not been used by Defendants to discriminate intentionally against Plaintiffs, Defendants'

use of one or more of each has resulted in a disparate impact against older employees, including Plaintiffs, as follows:

      a.    Upon information and belief, Defendants' assessment and identification of the potential of its employees has resulted in a statistically significant disparity in the promotion rates of its older employees.

      b.    Upon information and belief, Defendants' policies regarding relocation have resulted in a statistically significant disparity in the promotion rates of its older employees.

314.    Defendants, by their policies and/or practices, have violated the ADEA.

315.    As a direct and proximate result of Defendants' violation of the ADEA, Plaintiffs have sustained the injuries set forth herein.

316.    Plaintiffs are now suffering and will continue to suffer irreparable injury as a result of Defendants' age discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

### COUNT III
### PLAINTIFF HUGHES AGAINST DEFENDANTS
### FOR RETALIATION IN VIOLATION OF THE ADEA

317.    Plaintiff Hughes incorporates by reference paragraphs 1 through 316 of the Complaint as if set forth fully herein.

318.    Defendants by their retaliatory and unlawful conduct in failing to promote Plaintiff Hughes from an interim position to a full-fledged Preparation and Flow Leader, has violated the ADEA.

319.    Defendants' conduct warrants the imposition of liquidated damages.

320.    Defendants' conduct warrants the imposition of punitive damages.

321.     Plaintiff Hughes has in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

322.      Plaintiffs Hughes is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory and unlawful acts unless and until this Court grants the relief requested herein.

**COUNT IV**
**PLAINTIFF GANZ AGAINST DEFENDANTS**
**FOR AGE DISCRIMINATION IN VIOLATION OF THE NJLAD**

323.     Plaintiff Ganz incorporates by reference paragraphs 1 through 316 of the Complaint as if fully set forth herein.

324.     Defendants, by their age discriminatory and unlawful conduct in failing to promote and rejecting Plaintiff Ganz for the Active Selling Kitchen & Bath Specialist, Active Selling Leader (Elizabeth), and Active Selling Leader (Paramus) positions, have violated the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.*

325.     Defendants' conduct warrants the imposition of punitive damages.

326.     Plaintiff Ganz has in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

327.     Plaintiffs Ganz is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and unlawful acts unless and until this Court grants the relief requested herein.

**COUNT V**
**PLAINTIFFS BRANSON AND ROSE AGAINST DEFENDANTS**
**FOR AGE DISCRIMINATION IN VIOLATION OF THE**
**MARYLAND GOVERNMNET CODE ANN. § 20-606(a) *ET SEQ.***

328.    Plaintiffs Branson and Rose incorporate by reference paragraphs 1 through 316 of the Complaint as if fully set forth herein.

329.    Defendants, by their age discriminatory and unlawful conduct in failing to promote and rejecting Plaintiff Branson for the Co-Worker Relations, Unit Staff Planning, Retail Store Commercial Manager, and Customer Service Manager positions, have violated the Maryland State Government Code Ann. § 20-606(a) *et seq.*

330.    Defendants, by their age discriminatory and unlawful conduct in failing to promote and rejecting Plaintiff Rose for the positions of Learning Delivery Specialist and People and Culture Generalist (twice), have violated the Maryland State Government Code Ann. § 20-606(a) *et seq.*

331.    Defendants' conduct warrants the imposition of punitive damages.

332.    Plaintiffs Branson and Rose have in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

333.    Plaintiffs Branson and Rose are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and unlawful acts unless and until this Court grants the relief requested herein.

**COUNT VI**
**PLAINTIFF RAUSERT AGAINST DEFENDANTS**
**FOR AGE DISCRIMINATION IN VIOLATION OF THE CADA**

334.    Plaintiff Rausert incorporates by reference paragraphs 1 through 316 of the Complaint as if fully set forth herein.

335.    Defendants, by their age discriminatory and unlawful in failing to promote and rejecting Plaintiff Rausert for the People and Cultural Generalist and the two Active Selling Leader positions, have violated the Colorado Anti-Discrimination Act, as amended, C.R.S. § 24-34-401 *et seq.*

336.    Plaintiff Rausert has in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

337.    Plaintiffs Rausert is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and unlawful acts unless and until this Court grants the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiffs, LuCinda Branson, Evan Ganz, Darlene Hughes, Thomas Isaak, Monica Rausert, Barbara Rose, and Jack Shannon respectfully request that this Court enter judgment in their favor and against Defendants, IKEA US Retail, LLC, f/k/a IKEA US East, LLC d/b/a IKEA; IKEA North America Services, LLC, d/b/a IKEA; and IKEA North America Services, LLC d/b/a IKEA, and issue an Order:

        a.    declaring the acts, policies and practices complained of to be a violation of the ADEA;

b.      declaring the acts, policies and practices complained of by Plaintiff

Branson and Plaintiff Rose to be a violation of Maryland State

Government Code Ann. § 20-606(a) *et seq.*;

c.      declaring the acts, policies and practices complained of by Plaintiff Ganz

to be in violation of the New Jersey Law Against Discrimination, as

amended, N.J.S.A. 10:5-1, *et seq.*;

d.      declaring the acts, policies and practices complained of by Plaintiff

Rausert to be in violation of the Colorado Anti-Discrimination Act, as

amended, C.R.S. § 24-34-401 *et seq.*;

e.      enjoining and restraining permanently the violations alleged herein;

f.      awarding compensatory damages to Plaintiffs to make them whole for all

past and future lost earnings, benefits, earnings capacity and other injuries

which Plaintiffs have suffered and will continue to suffer as a result of

Defendants' discriminatory conduct;

g.      awarding compensatory damages under state law to Plaintiffs Branson,

Ganz, Rausert, and Rose to make them whole for all past and future pain

and suffering, emotional distress, embarrassment, humiliation, loss of self-

esteem, mental anguish, and loss of life's pleasures that they have suffered

and will continue to suffer as a result of Defendants' age discriminatory

conduct;

h.      awarding compensatory damages to Plaintiff Hughes to make her whole

for all past and future pain and suffering, emotional distress,

embarrassment, humiliation, loss of self-esteem, mental anguish, and loss

of life's pleasures that Plaintiff has suffered and will continue to suffer as a result of Defendants' retaliatory conduct in violation of the ADEA;

i.      awarding liquidated damages to Plaintiffs;

j.      awarding punitive damages to Plaintiff Ganz, Plaintiff Branson and Plaintiff Rose pursuant to their state law claims;

k.      awarding punitive damages to Plaintiff Hughes for Defendants' retaliatory conduct in violation of the ADEA;

l.      awarding to Plaintiffs the costs of this action, together with reasonable attorney's fees;

m.      awarding Plaintiffs such other damages as are appropriate under the anti-discrimination laws at issue herein;

n.      granting such other and further relief as this Court deems appropriate.

**CONSOLE MATTIACCI LAW, LLC**

BY:      */s/ Brian C. Farrell*
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Brian C. Farrell
Julie A. Uebler
1525 Locust Street, 9th Floor
Philadelphia, PA  19102
(215) 545-7676; (215) 565-2855 (fax)
console@consolelaw.com
mattiacci@consolelaw.com
santanto@consolelaw.com
farrell@consolelaw.com
uebler@consolelaw.com

Attorneys for Plaintiffs
LuCinda Branson,
Evan Ganz,
Darlene Hughes,
Thomas Isaak,

Monica Rausert,
Barbara Rose, and
Jack Shannon

Dated: November 6, 2020